# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| TAMMY W. HOWELL, | ) |
| Claimant, | ) ) ) |
| vs. | ) ) Case No. 7:16-CV-1769-CLS |
| NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Claimant, Tammy Howell, commenced this action on October 30, 2016, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered the medical opinions in the record and improperly evaluated her fibromyalgia.[1] Upon review of the record, the court concludes that these contentions lack merit, and that the Commissioner's ruling is due to be affirmed.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (alterations supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because a determination on the question of whether a claimant is disabled is not a

---

[1] Claimant also stated in her opening brief that she was challenging the ALJ's consideration of her subjective reports of pain, and the ALJ's development of the administrative record. *See* doc. no. 8 (claimant's brief), at ECF 4. Even so, she did not make any substantive argument about either of those issues, and she has therefore waived the right to argue them. *See Morrison v. Commissioner of Social Security*, 660 F. App'x 829, 832 (11th Cir. 2016) ("To preserve an issue for appeal, the party must raise the 'specific issue to the district court' so that the district court has 'an opportunity to consider the issue and rule on it. . . . Generally, this means that the issue must be plainly and prominently raised, with supporting arguments and citations to the evidence and to relevant authority.") (citations omitted).

medical opinion, but is, instead, a decision "reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d), 416.927(d).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other evidence of record. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Claimant asserts that the ALJ improperly considered the opinions of treating physician Dr. Keisha Lowther and consultative physician Dr. Larry O. Skelton. Dr. Lowther provided a Medical Source Statement dated October 25, 2011. She indicated that claimant experienced symptoms of muscular pain, fatigue, joint pain, leg cramps, and depression, all of which have been identified by the American College of Rheumatology as being associated with fibromyalgia. She also indicated that

claimant experienced pain in the following areas: occiput; low cervical; trapezius; lateral epicondyle; gluteal; and greater trochanter, all of which are relevant to a fibromyalgia diagnosis. She rated claimant's pain as falling within the "moderate to moderately severe" range, with "moderate" being defined as "can do most <u>activities of daily living</u>, <u>self-care</u> and <u>work activity</u>, but patient requires brief breaks to complete activities," and "moderately severe" defined as "symptoms and abnormalities substantially interfere with the patient's ability to do <u>activities of daily living</u>, some activities of <u>self-care</u>, and <u>work activity</u>; the patient may start tasks, but symptoms and abnormalities cause patient to abandon tasks."[2] More than three days a month, claimant would experience pain so severe that she would be unable to perform activities of daily living and some activities of self-care, might be confined to a chair or bed, and would require continuing medications to effectuate her pain management. Factors such as changing weather, fatigue, and stress would exacerbate claimant's pain. Claimant also experienced fatigue that was sufficiently severe to decrease her ability to participate in ordinary activities by 50%. Her fatigue would cause her to feel "unrefreshed" even after sleeping for an adequate amount of time.[3] In a sustained work setting, claimant would be able to lift and carry a maximum of five pounds occasionally and one pound frequently. She could stand and/or walk less

---

[2] Tr. 598 (emphasis in original).
[3] *Id.*

than two hours, and sit for less than six hours, during an eight-hour work day. She could occasionally use her fingers, hands, and arms for grasping, manipulating objects, and reaching. Dr. Lowther did not comment on claimant's need for additional work breaks, her cognitive functioning, or the overall effect of claimant's limitations on her ability to do work activities. She did indicate that claimant would be absent from work about three times a month as a result of her impairments and treatment, and that claimant had experienced the noted limitations since July 16, 2010.[4]

The ALJ afforded Dr. Lowther's Medical Source Statement only "some weight" because Dr. Lowther's opinion that claimant could perform less than a full range of sedentary work "is just not supported by her own physical examination findings on the claimant, which show little abnormalities."[5] That decision is supported by the record. Despite claimant's diagnosis of fibromyaliga and the corresponding notations of back and other joint pain, Dr. Lowther consistently reported that claimant demonstrated full range of motion, normal gait, and no motor deficits.[6]

Dr. Skelton conducted a "disability physical" examination on September 10,

---

[4] Tr. 597-601.
[5] Tr. 24.
[6] Tr. 535-39, 546-48, 666-78, 698-703.

5

2012. He stated that claimant complained of "fibromyalgia, with severe pain and fatigue. Neuropoathy of all didgets [*sic*], lower back pain. States can not sit or stand for any length of time. Not able to drive due to back and leg pain."[7] The clinical examination that claimant's gait was very slow, and she shuffled her feet, but she did not use a cane or assistive device to ambulate. She could not squat and rise, or stand on her toes or heels. She had normal range of motion in her fingers, wrists, elbows, ankles, and knees, but abnormal range of motion in her cervical and lumbar spine, both shoulders, and both hips.[8] Dr. Skelton's neurological examination findings included intact cranial nerves, equal deep tendon reflexes, normal sensation in all extremities, positive trigger points for fibromyalgia, and full grip strength, upper arm strength, and lower leg strength. Claimant's mood and affect were appropriate, and her decision-making was normal. Dr. Skelton assessed fibromyalgia, peripheral neuropathy, lower back pain, depression, and anxiety. His summary findings were that claimant is "very vocal and complains of severe pain to any ROM of her body," and that "[a]ll trigger points for fibromyalgia are positive."[9] Dr. Skelton did not comment on what functional limitations claimant might experience as a result of her impairments.

---

[7] Tr. 683.
[8] Tr. 684.
[9] Tr. 685 (alteration supplied).

6

The ALJ afforded Dr. Skelton's assessment "some weight" because, "while the claimant certainly may have some fibromyalgia pain, the physical findings during [Dr. Skelton's] examination show some contrast with the claimant's treatment history."[10] The ALJ pointed to Dr. Lowther's consistent findings of muscle tenderness but normal gait and range of motion. She also pointed to an assessment by a nurse practitioner in Dr. Lowther's office from September 26, 2012, only approximately two weeks after Dr. Skelton's assessment, which stated that claimant exhibited normal range of motion, muscle strength, and stability in all her extremities, with no pain upon inspection.[11]

The ALJ also considered the consistency of Dr. Lowther's and Dr. Skelton's assessments with evidence from other medical providers.[12] Dr. Drake Lavender, who treated claimant from April to July 2014, and from October 2014 to January 2015, noted claimant's diagnosis of fibromyalgia but did not document any related functional limitations.[13] Neurological findings by Dr. Mohammed Alsharabati during August and September of 2012 were normal.[14] Finally, Cr. Chima Ukachi noted in an October 9, 2010 consultative examination report that claimant that had been

---

[10] Tr. 24.
[11] Tr. 702.
[12] Tr. 24.
[13] Tr. 782-91, 813-22.
[14] Tr. 688-97.

diagnosed with fibromyalgia, but he described claimant's functional status as follows:

> She has independent activities of daily living such as shower, feeding and going to bathroom. She works as a medical biller as mentioned earlier. She can dress herself and feed herself. She can stand at one time for 10-15 minutes and walk on level ground for less than 200 feet. She can sit for 10-15 minutes. She can lift 15-20 pounds. She can drive a car independently and she is able to do the household chores. She is able to do vacuuming.

Tr. 520. During the clinical examination, claimant was able to get on and off the exam table, get up and out of a chair, and undress herself. The spine and extremity findings were as follows:

> Revealed palpable peripheral pulses in the pedal and radial area. No edema, cyanosis or clubbing. Gait is normal. She does not require any assistive device. Her grip strength is 5/5 bilaterally. She is right-hand dominant. Range of motion is normal in the elbow, forearm, wrist, shoulder, knee and ankle. She has slightly decreased range of motion in the cervical spine at 40 degrees on flexion and 60 degrees on extension. Lumbar spine flexion is 60 degrees on anterior flexion and lateral flexion 10 degrees. Straight leg raising test was positive at 60 degrees. She lays straight back on the table with difficulty. She can walk on her heels and walk on her toes without difficulty. She can squat better than halfway. Heel-to-toe coordination was good. No ulcerations on her skin. No varicosities.

Tr. 521. Claimant's neurological findings — including muscle strength, coordination, and reflexes — were normal. In summary, Dr. Ukachi observed that, although claimant experienced limited range of motion in the cervical and lumbar areas, no limitations were observed in functional areas such as sitting, walking, hearing, or

8

speaking.[15] Even though Dr. Ukachi's assessment was dated more than three years before the ALJ's decision, while claimant still was working, his findings, and the findings in the other medical records described above, are consistent with the ALJ's findings. In summary, the court finds that the ALJ adequately articulated her reasons for failing to fully credit the opinions of Drs. Lowther and Skelton, and that the ALJ's findings were supported by substantial evidence.

Claimant also asserts that the ALJ failed to properly consider her fibromyalgia in accordance with Social Security Ruling 12-2p. But all of her arguments are based upon the portions of the Ruling which provide instructions for evaluating whether fibromyalgia is a medically determinable impairment. Those arguments miss the point, because the ALJ not only considered claimant's fibromyalgia to be a medically determinable impairment, she found that it was a *severe* impairment.[16] The remaining consideration is whether claimant's fibromyalgia, considered in combination with her other severe and non-severe impairments, resulted in disabling functional limitations. Social Security Ruling 12-2p provides that, once fibromyalgia has been established as a medically determinable impairment,

> we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work. If objective medical evidence does

---

[15] Tr. 521.
[16] Tr. 20.

not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

SSR 12-2p, 2012 WL 3104869, at *5. In assessing the claimant's residual functional capacity, the ALJ should "consider a longitudinal record whenever possible because the symptoms of [fibromyaliga] can wax and wane so that a person may have 'bad days and good days.'" *Id.* at *6 (alteration supplied). ALJ's are also cautioned that pain, fatigue, and other symptoms associated with fibromyalgia may result in exertional and non-exertional limitations that would erode the claimant's occupational base, preclude use of the medical-vocational guidelines ("Grids"), and require vocational expert testimony. *Id.*

The ALJ in this case did not explicitly mention SSR 12-2p, but her analysis nonetheless was consistent with the requirements of that Rule. She stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. While it is reasonable that the claimant may experience some swelling and pain that would cause some exertional and non-exertional limitations, the objective medical evidence does not support a complete inability to work.

10

Tr. 23. The ALJ considered claimant's treatment history, the reports from treating and consultative physicians, the effect of claimant's obesity on her overall abilities, and claimant's reported daily activities. The ALJ did not consider only a snapshot of claimant's symptoms at a given time, but instead evaluated the totality of her medical condition and its evolving effects on her functional abilities over the several years that had passed since her alleged onset date. Finally, the ALJ adequately considered both exertional and non-exertional limitations, found claimant to be capable of performing less than a full range of sedentary work, and obtained vocational expert testimony to determine claimant's ability to perform work existing in significant numbers in the national economy despite her limitations.

In summary, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 28th day of July, 2017.

_____
United States District Judge